# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEE EDWARD ANDERSON,**

       **Plaintiff,**

v.                                    **Case No. 6:19-cv-2014-JA-GJK**

**WAYNE IVEY and ZACHARY
FERREIRA,**

       **Defendants.**

_____

## ORDER

Lee Edward Anderson brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment to the U.S. Constitution, and he also brings claims under Florida law. The two Defendants—the Sheriff of Brevard County, Florida, in his official capacity and Deputy Zachary Ferreira in his individual capacity—now move for summary judgment. (Mot., Doc. 46). But there are numerous material facts in dispute, and viewing the evidence in Anderson's favor—as required when assessing Defendants' summary judgment motion—the motion must be denied.

## I.   Factual and Procedural Background

Shortly before 11:00 p.m. on Monday, January 29, 2018, Anderson was driving in the city of Cocoa, Florida, in his 2007 Mercury Grand Marquis. Anderson, who was employed as a network controller for a defense contractor,

was headed from his home in Rockledge to his job at Cape Canaveral.[1] After traveling west on Peachtree Street, Anderson turned north onto Pineda Street.[2] Deputy Ferreira was driving his marked Sheriff's office Dodge Charger that evening, and he had traveled south on Pineda and was stopped at the stop sign at Peachtree when Anderson made the turn. (Anderson Dep., Doc. 51, at 42; Ferreira Dep., Doc. 47, at 30, 42). According to Deputy Ferreira, as the Marquis passed he looked in his side mirror and noticed that the Marquis had "[n]o visible tag lights."[3] (Ferreira Dep. at 50). Deputy Ferreira made a U-turn and followed the Marquis. (Id. at 52; Anderson Dep. at 42). Deputy Ferreira claims that while he was traveling behind the Marquis northbound on Pineda near Endeavor Elementary School, he observed a small clear plastic bag tied in a knot fly out of the passenger side of the Marquis and land in the grass on the east side of Pineda, across from the school. (Ferreira Dep. at 68–71, Ferreira

---

[1] Anderson typically worked a daytime shift, but that evening he was scheduled to earn overtime pay by covering a night shift for a vacationing co-worker. (Anderson Dep., Doc. 51, at 15–16).

[2] Deputies described the area where the events at issue occurred as an area known for drug activity. (See Ferreira Dep., Doc. 47, at 73 ("It's a high crime area, that whole vicinity. There's drug activity, gang activity, stuff like that in that area."); Yearty Dep., Doc. 48, at 23 (describing a "moderate to heavy volume" of "drug activity in that area")).

[3] Section 316.221, Florida Statutes, is titled "Taillamps" and provides in part that "[e]ither a taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." § 316.221(2), Fla. Stat. And the taillamp or separate lamp "shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted." Id.

2

Arrest Report, Doc. 47-1 at 2; Ferreira Case Report Narrative, Doc. 47-1 at 4).
He could not tell whether anything was in the plastic bag. (Ferreira Dep. at 71).

Deputy Ferreira remained behind Anderson's vehicle on Pineda as it
reached the red light at the intersection of Pineda and Dixon Boulevard.  When
the light turned green, Anderson turned right (east) onto Dixon and Deputy
Ferreira activated his overhead lights to initiate a stop of the Marquis.[4]
Anderson pulled over on the side of Dixon Boulevard, and Deputy Ferreira
parked behind the Marquis.  When Deputy Ferreira approached the driver's
door of the Marquis and told Anderson that his tag lights were out, Anderson
seemed surprised.  (Ferreira dashcam video #2 at 22:56:08 to 22:56:22).

Deputy Ferreira had radioed his intention to conduct a traffic stop, and at
least five other deputies, including a K-9 officer, responded for backup.  Field
Training Officer Deputy Robert Rowell and his trainee, Deputy Dalton
Brandow, arrived at the scene of the stop within a minute.  (See Ferreira
dashcam video #2; Rowell dashcam video #1).  After Anderson exited his car as
instructed by Deputy Rowell, Deputy Ferreira asked Anderson what he had
thrown out of the window while Deputy Ferreira was following the Marquis.

---

[4] When Deputy Ferreira activated the overhead lights, the dashcam on his
Charger turned on.  That dashcam preserves video beginning 30 seconds before it is
activated, and that video—submitted by Defendants in four segments—captured much
of the traffic stop.  (See Docs. 54 & 55 and accompanying flash drive).  Dashcams on
two other law enforcement vehicles also recorded video that Defendants submitted
with their summary judgment motion.  (See id.)

(Ferreira dashcam video #2 at 22:57:39 to 22:58:01).  Anderson denied throwing anything out of the window and insisted that the windows of the Marquis were up.  (Ferreira dashcam video #2 at 22:58:00 to 22:58:04).  Holding up his index finger, Deputy Rowell then told Anderson that he had "one chance."  (Ferreira dashcam video #2 at 22:58:04 to 22:58:07; Rowell Dep., Doc. 49, at 42).  Anderson insisted that he was telling the truth and reiterated that he did not throw anything out the window and that the window was up.  (Ferreira dashcam video #2 at 22:58:07 to 22:58:11).

Meanwhile, other officers, including Deputy William Yearty and Deputy Justin Winstead, went to Pineda Street across from the school to search for the bag that Deputy Ferreira reported seeing fly out of the Marquis's passenger window.  At 23:16:13, someone can be heard on Deputy Ferreira's radio saying, "Right by the school, I got a baggie with a couple of crack rocks in it."  (Ferreira dashcam video #4 at 23:16:13 to 23:16:16).  Dashcam video taken from the vehicle of Deputy Yearty shows that at 23:19:35[5] Deputy Yearty pulled over on Pineda near where Deputy Winstead was standing and shining a flashlight at the ground.  Deputy Yearty then put on gloves, picked a plastic bag up off the ground, and put it on the hood of his vehicle.  The bag contained a white

---

[5] Two dashcam videos from Deputy Yearty's vehicle are in the record.  They are substantially the same, but video #2 is of better quality and is partially in color rather than black and white.

substance, and Deputy Yearty tested it with his field-test kit.  At 23:24:22 to 23:24:24, Deputy Yearty and Deputy Winstead note on the dashcam video that the substance had tested positive as crack cocaine.

Deputy Yearty then drove to the scene of the traffic stop, where other deputies had been searching Anderson's vehicle.  That search, which included searches of Anderson's briefcase and the trunk of the Marquis, turned up nothing.  One of the deputies on the scene was K-9 officer David Lovell.  Deputy Lovell was not asked to have his trained narcotics-trained dog sniff Anderson's vehicle, and the dog accordingly remained in Deputy Lovell's vehicle throughout the stop and search.  (Lovell Dep., Doc. 50, at 13, 16).  Deputy Yearty gave the plastic bag to Deputy Ferreira, and ultimately Deputy Ferreira arrested Anderson for possession of cocaine and possession of drug paraphernalia.[6]  The

---

[6] Both Deputy Ferreira and Deputy Yearty wrote reports about the incident. (Ferreira Arrest Report, Doc. 47-1 at 1–2; Ferreira Case Report, Doc. 47-1 at 3–6; Yearty Case Supplement Report, Doc. 48 at 77–79).  None of those reports or Deputy Ferreira's Affidavit for Reimbursement of Investigative Costs (Doc. 47-1 at 7) mentions any of the other four officers involved.  Deputy Yearty's report states in part that he "conducted a search on foot" and "[w]hile on foot [he] located a clear plastic baggie tied in a knot" in front of the school.  (Doc. 48 at 78).  Deputy Ferreira's report similarly states that Deputy Yearty located the bag.  (Doc. 47-1 at 4).

But as is clear from Deputy Yearty's dashcam video and as acknowledged by both Deputy Yearty and Deputy Ferreira in their depositions, it was actually Deputy Winstead—not Deputy Yearty—who found the plastic bag.  (Yearty Dep. at 24 ("[A]s I pulled up to Deputy Winstead, he had located a plastic baggy on the ground."); Ferreira Dep. at 97).  As Deputy Yearty put it in his deposition, "I located it after he located it." (Yearty Dep. at 27).  Deputy Ferreira did not realize that Deputy Winstead was the one who found the bag until he reviewed Deputy Yearty's dashcam video the week before Deputy Ferreira's September 2020 deposition.  (Ferreira Dep. at 97–98).

cocaine in the plastic bag weighed less than one gram.  (Ferreira Dep. at 112).

Anderson was taken to jail, strip-searched, and ultimately released on bond at around 4:00 a.m. on Wednesday, January 31, 2018.[7]  (Anderson Dep. at 40–41, 50).  Two weeks later, on February 14, the state attorney filed a Notice of No Information, declining to pursues the charges against Anderson.  (Doc. 47-1 at 18).

Anderson filed this suit against Deputy Ferreira and the Sheriff in October 2019.  (Compl., Doc. 1).  In his Amended Complaint (Doc. 20), Anderson alleges two federal claims pursuant to 42 U.S.C. § 1983 and three claims under Florida law:  (1) against Deputy Ferreira for violation of the Fourth Amendment based on the stop, detention, and interrogation; (2) against Deputy Ferreira for false arrest/false imprisonment in violation of the Fourth Amendment; (3) against the Sheriff for false arrest/false imprisonment under Florida law; (4) against Deputy Ferreira for false arrest/false imprisonment under Florida law; and (5) against Deputy Ferreira for malicious prosecution under Florida law. Defendants seek summary judgment on all of Anderson's claims.

---

[7] Anderson held a secret security clearance—first acquired in 1987—for his job. (Anderson Dep. at 14–15).  As a condition of that security clearance, he was required to tell his supervisor that he had been arrested, and he did so.  (Id. at 60–61).  He then had to redo the security clearance application, (id. at 63), and he was not allowed to view classified material until an investigation by his employer was completed six months later, (id. at 70–71).  Anderson had no prior arrests and has had none since. (Id. at 71).

## II.   Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  But when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson, 477 U.S. at 251–52).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

### A. Anderson's Federal Claims

In Counts I and II, Anderson challenges the traffic stop and his arrest and imprisonment pursuant to 42 U.S.C. § 1983, alleging in both counts that Deputy Ferreira violated the Fourth Amendment's proscription against unreasonable seizures. Deputy Ferreira contends that he is entitled to summary judgment on both claims based on the defense of qualified immunity. But it is not possible to conclude from the summary judgment record that Deputy Ferreira enjoys qualified immunity from Anderson's claims.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009). Here, there is no dispute that Deputy Ferreira was acting within his discretionary authority during the events at issue. Thus, "the burden . . . shifts to the plaintiff to show that qualified immunity should not apply." Lewis, 561 F.3d at 1291.

Determination of whether Deputy Ferreira enjoys the benefit of qualified

immunity at the summary judgment stage requires assessment of (1) whether the facts, viewed in the light most favorable to Anderson, show a violation of a constitutional right and (2) whether that right was clearly established at the time of the events at issue.  See Pearson, 555 U.S. at 232; see also Tolan v. Cotton, 572 U.S. 650, 655–56 (2014); Stryker v. City of Homewood, 978 F.3d 769, 773 (11th Cir. 2020) ("If, at the summary judgment stage, the evidence construed in the light most favorable to the plaintiff shows that there are facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial.").  This two-part analysis need not be undertaken in any particular order.  Pearson, 555 U.S. at 236.

Both of Anderson's § 1983 claims arise under the Fourth Amendment, and both involve clearly established rights.  As Defendant's acknowledge, it "has long been clearly established that . . . an investigatory or traffic stop violates the Fourth Amendment absent 'reasonable suspicion' to suspect the particular person stopped of criminal activity or probable cause to believe that the driver has committed a traffic violation."  Bletcher v. City of Orlando, Case No. 6:13-cv-1913-Orl-37TBS, 2015 WL 13333135, at *6 (M.D. Fla. May 20, 2015).  And it has also long been clearly established that "a full custodial arrest violates the Fourth Amendment unless it is justified by a warrant or 'probable cause' to believe a crime has been committed."  Id.

Although an officer may obtain the benefit of qualified immunity if only

*arguable* probable cause or *arguable* reasonable suspicion existed, see id., here the facts are contested as to both arguable probable cause and arguable reasonable suspicion.  The parties vigorously dispute whether the Marquis's tag lights were out and whether Anderson threw a plastic bag out the window. Deputy Ferreira insists that the answer to both of these questions is yes, but Anderson maintains that neither assertion is true.  Under Anderson's version of events, there was not arguable probable cause to believe that a traffic violation occurred, arguable reasonable suspicion to suspect Anderson of criminal activity, or arguable probable cause to arrest Anderson for possession of drugs or drug paraphernalia.

First, Anderson maintains that the tag lights of the Marquis were not out on the night in question, relying on several pieces of evidence to support his position.  He correctly notes that the dashcam video from Deputy Ferreira's Charger does not establish that the tag lights were out; indeed, as Anderson argues, a jury viewing the video might conclude that it shows—as the Marquis turned from Pineda onto Dixon—that the tag lights were on.  (See Ferreira dashcam video #2 at 22:55:26–22:55:32; Anderson Dep. at 77).  Moreover, when Anderson and his son, Keithen, went to pick up the Marquis at the impound lot on January 31 after Anderson's release from jail, Keithen took photographs of the car at the impound lot that seem to show the tag lights functioning.  (See Doc. 61 & .jpg files on accompanying flash drive; see also Keithen Hamilton

Dep., Doc. 57, at 5–9). Anderson also took video of the Marquis when he got home that night; that video appears to show the tag lights illuminated. (See Doc. 61 & .mp4 video file on accompanying flash drive). And in his deposition, Anderson testified that since acquiring the Marquis in 2014, he had never had to change out the tag lights. (Anderson Dep. at 48). In view of this evidence, the Court cannot conclude at this stage of the case that arguable probable cause existed that a tag light violation occurred.

Second, Deputy Ferreira and Anderson present conflicting testimony about whether a plastic bag was indeed thrown out of the Marquis. Deputy Ferreira insists that he saw a bag fly out, but in a sworn affidavit Anderson states: "I neither had nor threw a plastic baggie or anything else out of my vehicle while travelling north on Pineda Street between Peachtree and Dixon." (Anderson Aff., Doc. 56, ¶ 3). At this stage of the case, Anderson's version of events must be credited, and it does not support reasonable suspicion of criminal activity by Anderson or probable cause to arrest him.

It is not the role of the Court to resolve disputes of fact in ruling on a motion for summary judgment. The record presents a credibility contest that cannot be resolved at this point.[8] Anderson will bear the burden of proving to a

---

[8] Deputy Ferreira acknowledges in the summary judgment motion that the facts must be "viewed in the light most favorable to the plaintiff" when assessing qualified immunity. (Doc. 46 at 15). But he then urges that the issue must be "analyzed from the perspective of the officer" and that "[t]he only perspective that counts is that of a

jury that his version of events is the correct one, but his account must be credited at the summary judgment stage.  Deputy Ferreira is not entitled to summary judgment on Anderson's § 1983 claims based on qualified immunity.

### B.   Anderson's State Law Claims

In addition to his federal claims in Counts I and II, Anderson brings claims under Florida law in Counts III, IV, and V.  He alleges false arrest/false imprisonment against the Sheriff (Count III) and Deputy Ferreira (Count IV).  And in Count V, he asserts malicious prosecution against Deputy Ferreira only.

Defendants contend that they are entitled to summary judgment on these claims because probable cause existed for Anderson's arrest.  Additionally, Deputy Ferreira asserts that he is immune from liability on Counts IV and V

---

reasonable officer on the scene." (Id. at 16 (quoting Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009)).  He also contends that "material issues of disputed fact are not a factor in the court's analysis of qualified immunity." (Id. at 18 (quoting Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005)).

But analyzing the issue "from the perspective of the officer" does not mean that courts are to accept the officer's testimony as true where it is contradicted by the non-moving party.  And the reason that issues of disputed fact "are not a factor" is because where facts are disputed at the summary judgment stage, the Court must accept the non-movant's view of the facts. See Robinson, 415 F.3d at 1257 ("With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute."); see also Tolan v. Cotton, 572 U.S. 650 (2014) (reversing grant of summary judgment based on qualified immunity in § 1983 case where lower court did not view the summary judgment evidence in the light most favorable to the non-movant); Stryker v. City of Homewood, 978 F.3d 769 (11th Cir. 2020) (same); cf. Williams v. Aguirre, 965 F.3d 1147, 1152 (11th Cir. 2020) ("Because, under [the plaintiff's] version of events, the officers enjoy no immunity from [his] complaint that they falsely accused him . . . , we affirm [the denial of their motion for summary judgment].").

because he did not act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See § 768.28(9)(a), Fla. Stat. (providing that "[t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, . . . unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property"). Both of Defendants' arguments are unavailing.

First, although Defendants are correct that the existence of probable cause bars claims of false arrest and malicious prosecution, Alvarez-Mena v. Miami-Dade Cnty., 305 So. 3d 63, 67–68 (Fla. 3d DCA 2019), summary judgment cannot be granted on those claims where the facts regarding probable cause are disputed, id. at 69. Here, viewing the evidence in the light most favorable to Anderson, probable cause did not exist.

And Deputy Ferreira's assertion of immunity under section 768.28(9)(a) fares no better. Under Anderson's version of events, a jury could conclude that Deputy Ferreira acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" so as to overcome his statutory immunity.

For these reasons, Defendants' motion for summary on Anderson's state law claims must be denied.

### C.    Punitive Damages

Anderson requests an award of punitive damages against Deputy Ferreira in the § 1983 claims in Counts I and II of the Amended Complaint.[9]   Deputy Ferreira seeks summary judgment regarding those requests.   But this portion of Defendants' motion must also be denied.

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."   Smith v. Wade, 461 U.S. 30, 56 (1983).   Here, if a jury credits Anderson's version of events, it could conclude that Deputy Ferreira was "motivated by evil motive or intent" or acted with "reckless or callous indifference" to Anderson's federally protected rights.   Deputy Ferreira is not entitled to summary judgment as to Anderson's requested punitive damages remedy.

## IV.   Conclusion

Accordingly, it is **ORDERED** that the Motion for Final Summary

---

[9] Anderson does not request punitive damages in any of his state law claims. (See Am. Compl., Doc. 20, at 7–10).

Judgment (Doc. 46) filed by Defendants is **DENIED** in all respects.

**DONE** and **ORDERED** in Orlando, Florida, on March ___, 2021.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record